**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RICHARD BULLOCK,**

        **Plaintiff,**

**-vs-**                                                                                                      **Case No.  6:04-cv-1705-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

# ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed**.

## *I. BACKGROUND*

### A.   **Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on May 21, 2002. R. 49-51. He alleged an onset of disability on April 25, 2002, due to neck and back impairments and an inability to lift or walk far distances.  R. 59.  His application was denied initially and upon reconsideration.

R. 32, 38. Plaintiff requested a hearing, which was held on August 5, 2004, before Administrative Law Judge John M. Lawrence (hereinafter referred to as "ALJ"). R. 333-62. In a decision dated August 26, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 17-24. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 331-32. The Appeals Council denied Plaintiff's request on October 15, 2004. R. 10-12. Plaintiff filed this action for judicial review on November 22, 2004. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of neck and back impairments, diabetes, and high blood pressure. R. 59. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from status post remote fusion C4 through C6; status post cervical laminectomy with foraminotomy; status post lumbar surgery with surgical changes; cervical spondylosis and stenosis; and lumbar spondylolisthesis, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 20. Plaintiff was found unable to return to his past relevant work as a sheet metal worker, which was performed at the heavy exertional level (R. 22), but he had the residual functional capacity to perform sedentary work with additional limitations (R. 21), as he could lift ten pounds occasionally, and could perform occasional pushing, pulling, bending, squatting, standing, climbing, twisting, or turning. R. 21. In making these determinations, the ALJ found that Plaintiff's allegations of severe pain and limitations were not totally credible for the reasons set forth in the body

of the decision.[1]  R. 21.  In addition to considering Plaintiff's vocational profile and RFC, the ALJ relied on the testimony of vocational expert V. David Pigue ("VE") to find that a significant number of jobs existed in the national economy that Plaintiff was capable of performing.  R. 22-23.  The VE testified that an individual with Plaintiff's limitations could perform jobs such as telephone answering service operator, telephone solicitor, and taxi cab dispatcher.  R. 357-59.  The VE also testified that at least 15,000 of these jobs existed in the regional economy and 500,000 in the national economy.  R. 357-59.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 23.

Plaintiff now asserts three points of error.  First, he argues the ALJ erred by finding that he could do other work in the national economy.  Second, he asserts that the ALJ erred by improperly applying the pain standard.  Third, he claims that the ALJ erred in evaluating his credibility regarding his limitations.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II. STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

---

[1] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on inconsistencies between those limits, medical evidence, and Plaintiff's reports to medical providers.  R. 21.

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *III. PAIN AND CREDIBILITY*

Plaintiff contends that the ALJ improperly discredited Plaintiff's testimony of the severity of his back and neck pain because his impairments were documented in the record and would reasonably be expected to give rise to the alleged pain. The Commissioner contends that the medical and other evidence does not corroborate Plaintiff's allegation that he is unable to perform any substantial gainful activity.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and

laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 20-21. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, immediately before discussing Plaintiff's RFC, the ALJ stated:

> The Administrative Law Judge finds the claimant's allegations are not totally credible based on the objective evidence.  Although the claimant's impairments are reasonably

>expected to produce pain, his complaints suggest a greater severity of impairments than can be shown by the objective medical evidence. The claimant reported he was doing "extremely well" following cervical surgery (May 2002) and had plans to return to work within a few weeks after lumbar surgery (August 2002) (Exhibit 6F). However, he now maintains constant neck pain, rating the severity of his pain as a 6 to an 11 on a scale of 1 to 10 (Exhibit 13F). At the hearing he denied driving, but finally admitted and downplayed his functional limitations, *i.e.*, testifying he can lift 1 to 5 pounds, walk 50 feet, stand 15 minutes, sit 15 minutes, perform limited reaching, pushing or pulling and maintained bending is difficult and his grip is decreased. The undersigned notes that the residual functional capacity is taken directly from a treating source, Dr. Alvarez (Exhibit 13F), and that the claimant's activities of daily living are consistent with the residual function capacity found. The Administrative Law Judge rejects that statement of total disability by treating physician Dr. Feldman (Exhibit 14F), as his opinion is unsupported by any diagnostic findings and is wholly inconsistent with other evidence of record.[2] A physician's conclusory statement that the claimant is disabled is not definitive of the ultimate issue. The weight given such a statement depends on whether it is consistent with other evidence of record. The medical evidence does not show disabling symptoms.

R. 21.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that, although he admittedly reported doing extremely well on August 14, 2002, the ALJ ignored other evidence that Plaintiff also reported that same day, of having pain in the

---

[2] Without argument, Plaintiff cites the in his brief the conclusory opinion from Andrew C. Feldman, D.O., that Plaintiff was totally disabled secondary to cervical and lumbar disc disease and several surgeries. R. 120. The Commissioner contends that the ALJ appropriately rejected this opinion because it was conclusory and did not explain how Plaintiff's condition limited his ability to work. Because Plaintiff appears to concede the point by failing to raise it in his analysis, the Court need not reach the issue.

lower back aggravated by standing, walking, and sitting. R. 178.  Plaintiff received treatment for cervical spondylosis and lumbar spondylolisthesis from January to March 2002 (prior to his onset date of April 25, 2002) with Stephane Lavoie, M.D., who recommended cervical decompression surgery and a lumbar fusion procedure.  R. 145-150.  On May 8, 2002, Plaintiff underwent a cervical laminectomy and foraminotomy at C2-3; an inspection of C6-7 revealed no need for a fusion procedure.  R. 163.  After this surgery, on June 4, 2002, Plaintiff reported significant improvement with relief of his upper extremity parasthesias.  R. 180.

In August 2002, German Montoya, M.D., Plaintiff's neurosurgeon, removed a synovial cyst from Plaintiff's lumbar area.  R. 177-78.  During a post-surgical follow-up appointment on August 28, 2002 (the time period that the ALJ cites in the credibility discussion), Plaintiff still had no major complaints and reported getting good relief with his pain medication, and physical therapy was scheduled.  R. 177.  When Plaintiff returned to Dr. Montoya on September 18, 2002, he was doing well with good strength in both legs and normal gait; he was optimistic about his condition and planned to return to work in the following three to four weeks.  R. 176.  Without question, the evidence from the records of Dr. Montoya, the neurosurgeon, supports the ALJ's credibility determination.

Plaintiff contends that the ALJ failed to recognize that the August 2002 statements about his condition were made before he re-injured his neck, his knee, and his back in November 2002. R. 191. Plaintiff contends that he had pain following the knee surgery after the November 2002 injury and increased neck and back pain for which Dr. Alvarez, the treating neurologist, recommended a surgical consultation.  R. 307-08.  He points to evidence of mild to moderate denervative findings at C5-C6 segment and increased insertional activity at right anterior tibialis and L4 paraspinal segment; the

impression was right median carpal tunnel lesion, left C5 radiculopathy and possible right L4 radiculopathy. R. 330. However, in contrast to Plaintiff's contentions, Dr. Alvarez's overall conclusion from these tests was that the findings were "mild." R. 330 ("These findings alone are non-specific but likely would be seen in mild denervation states.").

Moreover, during the evaluation conducted by Dr. Alvarez subsequent to November 2002, on April 15, 2003, Plaintiff showed no evidence of definite neurological deficits. R. 321-24. Dr. Alvarez opined in April 2003 (six months after the November 2002 re-injury) that Plaintiff could continue on the "same activity restrictions of not lifting over 10 pounds, no excessive pushing or pulling, standing, bending, squatting or climbing." R. 324. Although Plaintiff reported experiencing pain and other symptoms to Dr. Alvarez (R. 321-23), during the examination, Dr. Alvarez observed no tenderness or muscle spasms in the cervical and thoracic areas, and straight leg raising tests were negative, although range of motion was limited. R. 323. In light of Plaintiff's prior surgeries, Dr. Alvarez recommended consultation with Dr. Montoya or another neurosurgeon. R. 324. Dr. Alvarez reiterated the light-duty limitations during follow-up examinations on May 13, 2002. R. 320. On June 17, 2003, Dr. Alvarez saw Plaintiff for his final visit and opined that Plaintiff had a 14% whole person impairment rating due to his prior surgeries and the November 2002 work place accident. R. 317.

Plaintiff's takes Dr. Alvarez's opinions out of context. When Dr. Alvarez stated: "I would suggest that he should be off work until the back surgeon releases him to work. He obviously, as I've stated previously, needs to be seen by a back surgeon for further care. I really do not have anything else to offer, unfortunately" (R. 316), he was referring to Plaintiff's "work" as his heavy-exertion position doing sheet metal work, since he was being consulted regarding the on-the-job injury and based on Dr. Alvarez's comments at the initial visit on April 15, 2003. Dr. Alavarez at that visit said

it was "imperative" that Plaintiff see "Dr. Montoya or some other neurosurgeon" to determine the course of treatment, yet (at that same visit) also released Plaintiff for light-duty work with a ten-pound lifting restriction, etc., which Dr. Alvarez believed would "likely remain in place indefinitely given his lack of improvement." R. 324. Dr. Alvarez did not preclude Plaintiff from doing light-duty work, only heavy-duty sheet metal work. He also made a note of Plaintiff's wife's comments that "even if he could work, he could not tolerate the drive to Ocala [from DeLand] and he could not stand all day at the work there." R. 314. Also as a result of the November 2002 workplace injury, Plaintiff underwent arthroscopic surgery for his knee on April 21, 2003. R. 307-08. Following surgery, Plaintiff did well with good mobility and no pain. R. 298 (May 2003). There is no mention in the record of complaints of knee pain after that time. The ALJ properly relied on Dr. Alvarez's light-duty restrictions to Plaintiff as substantial evidence in limiting the credibility of Plaintiff's limitations.

The other reason the ALJ offered for discrediting Plaintiff's subjective complaints was Plaintiff's lack of candor about his driving. R. 21. There are references in the record to Plaintiff driving on a consistent basis, although it did bother his neck to wear a seat belt and he required a doctor's note to avoid wearing it. *See, e.g.*, R. 103. He initially testified at the hearing that he did not drive at all. R. 351. He belatedly admitted to the ALJ that he did drive. R. 351-55.

In sum, the ALJ acknowledged that Plaintiff had disorders which could reasonably cause some pain, however, the ALJ identified reasons for partially discrediting Plaintiff's subjective complaints based on the objective medical evidence and Plaintiff's candor at the hearing about his driving. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *IV. VE TESTIMONY*

Plaintiff contends that the ALJ erred in determining that Plaintiff could perform other work in the national economy. The Commissioner contends that the ALJ's RFC determination, based on the testimony of the VE, was clearly supported by substantial evidence the ALJ had no duty to recontact Dr. Alvarez for clarification of his opinion because it was not unclear or ambiguous.

Once the ALJ finds that a claimant cannot return to his prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote*, 67 F.3d at 1558. In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the "grids." *Foote*, 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a VE. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a VE to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific

finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Plaintiff has past work experience as a sheet metal worker, which is classified as heavy skilled labor. R. 60, 357. The ALJ asked the VE at the hearing to give his opinion as to what work an individual could perform if he was unable to lift over 10 pounds, with no excessive pushing, pulling, bending, squatting, standing, climbing, twisting or turning. R. 358. The ALJ also stated that he meant by "no excessive" that "he could do that occasionally." R. 358. The VE identified jobs such as telephone answering service operator, telephone solicitor, and taxi cab starter. R. 359. Although the ALJ adopted the assessment by Dr. Alvarez which included "no excessive pushing, pulling, bending, squatting, standing, climbing, twisting or turning"(R. 21), Plaintiff contends the ALJ failed to recognize that Dr. Alvarez opined Plaintiff "should be off work until the back surgeon releases him to work." R. 316 (June 17, 2003). Plaintiff contends that Dr. Alvarez's restrictions would prevent Plaintiff from performing any of the work as identified by the VE. He also contends that the ALJ improperly assumed that Dr. Alvarez's restriction of "no excessive" pushing, pulling, etc. that Plaintiff could do those activities occasionally even though there was no indication of what Dr. Alvarez meant by the restrictions he placed on Plaintiff. Plaintiff argues that the ALJ had a duty to develop the record by contacting Dr. Alvarez to inquire what he meant by "no excessive" pushing, etc.

The Commissioner contends, that while Dr. Alvarez's recommendation that Plaintiff should be off work until a back surgeon released him to work may be a prudent suggestion, it is not an opinion of disability and Dr. Alvarez did not alter his opinion that Plaintiff was capable of light duty

activities or state that Plaintiff had any additional limitations; a mere suggestion that a surgeon *might* find Plaintiff disabled is insufficient to prove disability. As discussed above, Dr. Alvarez, fully aware of Plaintiff's failure to see a back surgeon, released him for light-duty. R. 314.

As the Commissioner points out, Dr. Alvarez's reports were complete and based on acceptable laboratory and clinical findings and Plaintiff's counsel (at the administrative hearing) did not request any further development of the record such as re-contacting Dr. Alvarez. R. 335. The Commissioner contends that Dr. Alvarez's opinion is not unclear or ambiguous and does not trigger a duty for the ALJ to recontact him for clarification. See 20 C.F.R. § 404.1512(e) (clarification is only necessary when a treating source's report contains a conflict or ambiguity that must be resolved; the report does not contain all the necessary information; or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques). Accordingly, the ALJ was justified in his reliance upon the VE's testimony and the examples in the grids. *See id.*

### *V.  CONCLUSION*

The record in this case shows that Plaintiff has neck and back impairments which cause him some pain. The ALJ appropriately considered these circumstances, assessed Plaintiff's credibility regarding his limitations, and analyzed the circumstances in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on January 31, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record